UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PASCAL DOUGBOH,**<br><br>Plaintiff,<br><br>v.<br><br>**CISCO SYSTEMS, INC.,**<br><br>Defendant. | Civ. No. 2:13-cv-04267 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff, *pro se*, alleges that Defendant Cisco Systems violated Title VII of the Civil Rights Act of 1964 by declining to hire him on account of race. This matter comes before the Court on Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons below, Defendant's motion is **GRANTED** and Plaintiff's Amended Complaint is **DISMISSED** with prejudice.

## I.    BACKGROUND

The following facts are drawn from Plaintiff's Amended Complaint and the parties' papers in connection with Defendant's motion for summary judgment.[1] In 2007, Plaintiff Pascal Dougboh applied for a position as a Network Consulting Engineer ("NCE") with Defendant Cisco Systems, Inc., ("Cisco" or "Defendant"), a multinational communications and technology company. Cert. of Hubert Dalmon Norris, III ("Norris Cert.") ¶ 3. Cisco requires each applicant to create an online profile that allows applicants to search for and apply to Cisco's job openings.

---

[1] The Amended Complaint contains little factual background, and the Plaintiff failed to provide a Rule 56.1 counter-statement to material facts. *See* N.J. L. Civ. R. 56.1(a). Plaintiff, however, is a pro se litigant, and "district court judges often relax procedural rules, including Local Civil Rule 56.1(a), for an unrepresented litigant." *Shuman v. Sabol*, No. CIV.A. 09-2490, 2011 WL 4343780, at *6 (D.N.J. Sept. 14, 2011).

1

Norris ¶6. When creating their profiles, applicants are prompted to voluntarily self-identify their race and gender, because Defendant is a federal government contractor and is required to track the race and gender of its applicants. Norris Cert. ¶ 7. Defendant insists that information on race and gender is kept separately from the applications and is not accessible to decision-makers during the hiring process. Fortner ¶ 21; Lima Cert. ¶ 24; Norris Cert. ¶ 10. Plaintiff offers no evidence to the contrary.

Plaintiff, who self-identifies as an African-American male, says he was interviewed twice over the telephone and twice in person for the 2007 NCE position. Plaintiff says he received overwhelmingly positive feedback from all the interviews and that he believed an offer was forthcoming. Pl. Dep. Tr. 128-29. One of the phone interviewers, however, allegedly told Plaintiff that he "spoke with an accent that might not be acceptable and too fast." Pl. Resp. 3. Plaintiff never received an offer. He became suspicious of Defendant's motive several years later upon learning of Defendant's involvement in an unrelated employment discrimination lawsuit. Pl. Dep. Tr. 118:18-25, 119:10-14.

Since his 2007 application was denied, Plaintiff has applied for hundreds of positions with Cisco, "ranging from low level positions to Director level positions, and everything in between." Norris Cert. ¶ 11. He was interviewed in 2010 and 2011 for several positions not directly at issue in this action. Norris Cert. ¶ 12. In June of 2012, Plaintiff applied for two NCE positions labeled by Cisco's online platform as Requisitions "S924147" and "S924148.[2] Norris Cert., Exs. A, B. He was not selected to interview for these positions.

In November of 2012, Plaintiff responded to a "mass computer generated email[]" inviting him to apply to a separate position in Herndon, Virginia. Fortner Cert. ¶ 14. John Fortner, who initiated that email, explained his decision not to select Plaintiff to be interviewed:

> "While I had not yet completed a review of all applications, nor had I filled the available positions at the time I sent Plaintiff the email, I declined to consider Plaintiff for the position because I determined his resume was sub-par compared to others received, and that Plaintiff

---

[2] Strictly speaking, Requisition Numbers refer not to present job openings but to "a pipeline of candidates for future job openings in a particular position." Lima Cert. ¶ 13. That distinction does not affect the Court's analysis in this case.

2

>lacked the consistent employment history and career growth Cisco was seeking in candidates."

Fortner Cert. ¶19. Fortner and two other members of Defendant's hiring staff, Vanessa Lima and Hubert Dalmon Norris, III, certify they had no knowledge of Plaintiff's race at the time of the adverse employment decisions in June and November of 2012. Fortner ¶ 21; Lima Cert. ¶ 24; Norris Cert. ¶ 10. Defendant asserts that twelve of the fifty individuals eventually hired for the June 2012 positions were African American. Lim Cert. ¶ 25, Ex. F. Of those hired for the November 2012 openings, three out of thirteen self-identified as African-American. Fortner Cert., Ex. C.

### A. Procedural History of Instant Action

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 18, 2012, alleging that Defendant violated Title VII of the Civil Rights Act of 1964 by declining to hire Plaintiff on account of his race. Adams Cert., Ex. F. The Charge stated that in June 2012 Plaintiff applied for one of Defendant's NCE positions; that Defendant instead "selected a non-Black person" for the job; that Plaintiff believed he was denied on account of race; and that "[o]ver the years," Plaintiff "applied for several positions with this employer [but] only received four interviews and was rejected each time." Adams Cert., Ex. F.

 On April 9, 2013, after an EEOC investigation uncovered no information establishing a statutory violation, the agency dismissed the Charge and notified Plaintiff of his right to sue. Adams Cert., Ex. G. Plaintiff filed the Complaint on July 8, 2013, and amended the Complaint on April 22, 2014. On June 10, 2016, after an extended discovery period, Defendant moved for summary judgment.

## II.    DISCUSSION

Defendant's Motion for Summary Judgment asserts that Plaintiff's action for Title VII employment discrimination is untimely and meritless.

### A. Timeliness of Plaintiff's Action

A plaintiff must raise all Title VII claims with the EEOC prior to filing a complaint in federal court. An EEOC charge must be filed within 300 days of the alleged discriminatory action. 42 U.S.C § 2000e(5); *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111-13 (2002). Once the EEOC issues a

determination and right-to-sue letter, a plaintiff has ninety days to seek relief in federal court. 42 U.S.C. § 2000e-5(f). Each instance of failure to hire must be viewed as a "discreet act," not as part of an ongoing practice. *See Morgan*, 536 U.S., at 112, 114 (holding that "discrete acts that fall within the statutory period do not make timely acts that fall outside the time period"). The Court may, however, consider Plaintiff's earlier applications as "background evidence" in support of Plaintiff's timely claims. *Morgan*, 536 U.S., at 113.

The three adverse employment actions in 2012 fall within the 300-day EEOC filing window. Plaintiff also filed the Complaint with this Court on July 8, 2013, within ninety days of the EEOC notice. In short, claims relating to the two June 2012 application and the November 2012 application were timely filed.

The claim arising out of the 2007 application is statutorily barred because Plaintiff did not file with the EEOC until roughly five years after the alleged discrimination took place. To the extent Plaintiff intended to incorporate into this action the 2010 and 2011 positions, for which he was interviewed, those claims are also barred. They are discussed below only as "background evidence" relevant to the 2012 actions.

### B. Merits of Plaintiff's Title VII Claims

Absent direct evidence of discriminatory intent, a prima facie showing of discrimination for "failure to hire" contains four elements: the plaintiff (1) belongs to a protected class, (2) was qualified for the position, (3) was subjected to an adverse employment action despite being qualified, and, (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position. *Jones v. City of Philadelphia Fire Dept.*, 549 Fed. Appx. 71, 72 (3d Cir. 2014). This test "remains flexible and must be tailored to fit the specific context in which it is applied." *Id.* at 797-98. Defendants can rebut a successful prima facie case by "articulat[ing] some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S., at 802-03. To move forward with the action, a plaintiff must then show that the stated nondiscriminatory reasons were pretextual. *Shahin*, 531 Fed. Appx. 200, 203 (3d Cir. 2013).

<u>Plaintiff's Qualifications</u>

Eligibility requirements for the 2012 positions included a Cisco Certified Network Associate certification ("CCNA") as well as a BS or BA from a four-year technical program. Lima Cert., Exs. A, B. At the time of the 2012 applications, Plaintiff had obtained his CCNA certification, and his resume shows several

requisite technical degrees. Adams Cert., Ex. B. Defendant argues Plaintiff was not qualified because of his "lack of substantive experience" and because his "frequent job changes raised concerns about performance issues and possible employment termination." Def. Br. 17; Adams Cert., Ex. B.

Viewed in a most favorable light, Plaintiff's technical certification and education qualified him for the 2012 NCE and pNCE positions.

<u>Circumstances Do Not Raise an Inference of Discriminatory Intent</u>

Although Plaintiff belongs to a protected class, was qualified for the positions and was subject to adverse employment actions, he fails to raise an inference of discriminatory intent. As evidence, Plaintiff states that he was repeatedly denied a job offer; was asked to provide his race when completing Defendant's online job applications; that after an otherwise positive interview in 2007, one of Defendant's employees allegedly told Plaintiff his accent was problematic and that Plaintiff spoke too fast; and that Defendant was previously sued for race discrimination by other applicants. ECF 69, at 10.

Three Cisco employees who reviewed Plaintiff's 2012 applications testify that they had no knowledge of his race when they declined to interview or hire him. Although Defendant asked for Plaintiff's race in connection with the Office of Federal Contract Compliance Program, the hiring staff had no access to that information. Lima Cert. ¶ 6; Norris Cert. ¶ 8; Fortner Cert. ¶ 6. Those who interviewed Plaintiff in person in 2010 and 2011 obviously knew his race, but there is no basis for attributing that knowledge to the Cisco recruiters who declined Plaintiff's 2012 applications. *See Harris v. Dow Chemical Co.*, 586 Fed. Appx. 843, 847 (3d Cir. 2014) (affirming grant of summary judgment where plaintiff failed to rebut testimony that hiring decision-maker had no knowledge of plaintiff's race or age); *Shahin v. Delaware*, 531 Fed. Appx. 200, 203 (3d Cir. 2013) (finding no prima facie case of discrimination where record included no evidence that employer knew of plaintiff's national origin).

<u>Legitimate, Nondiscriminatory Reasons for Hiring Decision</u>

Even had the circumstances permitted an inference of discrimination, Defendant presents "legitimate, nondiscriminatory reason" for declining to hire Plaintiff for the 2012 positions. *See Shahin v. Delaware*, 531 Fed. Appx. 200, 203 (3d Cir. 2013). Specifically, the record shows that Defendant's hiring staff perceived Plaintiff to possess less technical skill and relevant experience than other applicants. *See id.* (holding plaintiff's lack of desirable experience relative to hired

5

candidates was legitimate, non-discriminatory reason for not hiring plaintiff); *Nelson v. Borgata Hotel Casino & Spa*, 05-5705, 2007 WL 2121643, at *6 (D.N.J. July 23, 2007) (finding that employer rebutted prima facie discrimination by showing that plaintiff "was not as experienced with modern equipment and technology as the individuals that [the defendant] chose to hire.").

Viewed as background evidence, interview notes in connection with Plaintiff's 2010 and 2011applications suggest that he was being denied for reasons unrelated to race. Norris Cert., Ex. C. Specifically, all ten interviewers whose notes are available stated that Plaintiff's technical skillset was inadequate. *Id.* Nothing in these interview notes even vaguely suggests racial animus. Members of Defendant's hiring staff were permitted to consider that Plaintiff's resume did not reflect recent periods of sustained employment. Adams Cert., Ex. B. And by the time of the 2012 adverse employment decisions at issue, Defendant was understandably alarmed that Plaintiff had applied for literally hundreds of positions at the company. Norris Cert. ¶ 11, Ex. B. Plaintiff does not respond with evidence "that Defendant's 'proffered reasons are weak, incoherent, implausible,' or 'so inconsistent that a reasonable factfinder could rationally find them unworthy of credence.'" *Sarullo*, 352 F.3d at 800.

To summarize, the record does not permit an inference of discriminatory intent, so Plaintiff fails to establish prima facie employment discrimination under Title VII. Even had Plaintiff succeeded, Defendant has provided legitimate, nondiscriminatory reasons for denying Plaintiff's application, and Plaintiff offers no evidence that these reasons were pretextual. It is unfortunate that Plaintiff feels he has been subject to racial discrimination, but the record simply would not allow a reasonable jury to reach that conclusion. This litigation has run its course.

### III. CONCLUSION

The Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Amended Complaint **DISMISSED**.

                                               /s/ William J. Martini
                                       **WILLIAM J. MARTINI, U.S.D.J.**

**October 20, 2016**